IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HELLS CANYON PRESERVATION
COUNCIL and OREGON NATURAL
DESERT ASSOCIATION,
        Plaintiffs,

3:11-cv-00023-PK

OPINION AND
ORDER

v.

KENT CONNAUGHTON, Regional Forester,
Region 6, and U.S. FOREST SERVICE,
        Defendants.

PAPAK, Magistrate Judge:

Plaintiffs Hells Canyon Preservation Council ("HCPC") and Oregon Natural Desert Association ("ONDA") originally filed this action against Mary Wagner, the regional forester for Region 6, and the U.S. Forest Service (collectively "Forest Service") challenging the Forest Service's reauthorization of livestock grazing permits for 24 allotments on federal lands under a categorical exclusion that relieved the Forest Service of its obligation to engage in the environmental analysis otherwise required by the National Environmental Policy Act (NEPA).[1]

---

[1] Since Mary Wagner no longer serves as the regional forester, plaintiffs apparently replaced her with the current regional forester, Kent Connaughton, in the caption on recent filings.

Page 1 - OPINION AND ORDER

Plaintiffs allege that the reauthorizations violate a Congressional 2005 appropriations rider, Pub. L. 108-447, §339, ("rider") which permits use of a categorical exclusion only under certain limited circumstances. Plaintiffs also allege that the reauthorizations violate NEPA, 42 U.S.C. § 4321 *et seq.*, because they occurred without the requisite environmental analyses. Now before the court is a motion to intervene (#8) filed by a number of individuals and entities (collectively "permittees") who operate cattle ranches and hold grazing permits on 15 of the 24 allotments at issue in this case. The permittees argue that they are entitled to intervention as of right under Fed. R. Civ. P. 24(a)(2) and, in the alternative, request permissive intervention under Fed. R. Civ. P. 24(b). For the reasons set forth below, the permittee's motion to intervene as of right is granted.

## LEGAL STANDARDS

Federal Civil Procedure Rule 24 governs both intervention as of right and permissive intervention. Rule 24(a) governs intervention as of right. It requires a court, upon timely motion, to permit intervention of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. Proc. 24(a)(2). Rule 24(b) governs permissive intervention by a private party. It provides that, where no federal statute confers a conditional right to intervene, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Proc. 24(b)(1).

In general, courts construe Rule 24 liberally in favor of the party seeking to intervene.

Page 2 - OPINION AND ORDER

*See e.g., Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001). When determining whether intervention is appropriate, a court is "guided primarily by practical and equitable considerations." *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998). The party seeking to intervene bears the burden to prove that it has met the requirements for intervention. *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004). Courts take "all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest Ctr. for Biological Diversity,* 268 F.3d at 820.

## FACTUAL BACKGROUND

In its 2005 fiscal year appropriations bill, Congress passed a rider permitting Forest Service grazing authorizations in fiscal years 2005 through 2007 to be "categorically excluded" from NEPA-required environmental analyses if three requirements were met. FY 2005 Consolidated Appropriations Act,§ 339 (Pub. L 108-447). The rider required that: "(1) the decision continues current grazing management of the allotment; (2) monitoring indicates that current grazing management is meeting, or satisfactorily moving toward, objectives in the land and resource management plan, as determined by the Secretary [of Agriculture]; and (3) the decision is consistent with agency policy concerning extraordinary circumstances." *Id.* The rider also provided that only 900 allotments could be categorically excluded in this manner. Congress later extended the rider for fiscal year 2008 and added the limitation that a categorical exclusion could not be used for any allotment within a federally designated wilderness area. FY 2008 Consolidated Appropriations Act, § 421 (Pub. L. 110-161).

This case concerns Forest Service decisions reauthorizing grazing permits in 25

Page 3 - OPINION AND ORDER

allotments within three eastern Oregon national forests under the categorical exclusion from NEPA requirements provided by the 2005 appropriations rider.[2] Permittees are the holders of many of the grazing permits on various allotments renewed by the Forest Service under the categorical exclusion described above. For example, one of the permittees seeking to intervene is the general partnership of Pat, Wanda, Segundo, and Edna Arriola, a family operating a cattle range in Bridgeport, Oregon, which holds a permit for grazing livestock on the Auburn Allottment in Wallowa-Whitman National Forest. (Arriola Decl., #10, ¶¶1-2.) The permittees uniformly declare that they seek to intervene to protect their interests in their grazing permits, which they assert could be rescinded or modified by this lawsuit. Permittees describe that loss or modification of their grazing permits would substantially impact their livelihood by forcing them to rent alternative private pasture or perhaps reduce the size of their herds. They also predict that requiring the Forest Service to undertake NEPA analysis of their grazing activities would encourage future litigation challenging grazing permits and give the Forest Service an incentive to reduce the extent of their grazing privileges.

//

//

//

---

[2] In Wallowa-Whitman National Forest, the Forest Service authorized grazing on the Auburn, Black Mountain, Bourne, Little Bald Mountain, Lobo, Brideport, and Stovepipe allotments. (Compl., #1, ¶88.) In Umatilla National Forest, the Forest Service authorized grazing on the Lucky Strike, Klondike, Little Wall, Monument, Tamarack, Hardman, Yellow Jacket, Collins Bute, Thompson Flats, Matlock, Ditch Creek, Texas Bar, and Central Desolation allotments. *Id.* at ¶98. In Malheur National Forest, the Forest Service authorized grazing on the Bridge Creek, Antelope, Deardorff, Hot Springs, Indian Creek, and Rail Creek allotments. *Id.* at ¶102.

## ANALYSIS

The Ninth Circuit provides a four-part test for analyzing motions to intervene as of right under Fed. R. Civ. P. 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc), *citing Sierra Club v. EPA,* 995 F.2d 1478, 1484 (9th Cir. 1993). Courts construe Rule 24(a)(2) broadly in favor of intervention in order to efficiently resolve issues and broaden access to the courts. *United States v. City of Los Angeles*, 288 F.3d 391, 397-398 (9th Cir. 2002).

The Ninth Circuit recently abandoned the so-called "federal defendant" rule, which categorically prohibited private parties from intervening as of right during the merits stage of litigation on claims brought under NEPA. *Wilderness Society*, 630 F.3d at 1176. In doing so, the Court explained that prohibiting intervention of right on the merits of all NEPA cases ignored "practical and equitable considerations" that should be evaluated on a "case-by-case basis." *Id.* Thus, under the second element of the four-part test, a prospective intervenor has a "significantly protectable" interest in an action so long as "the interest is protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Id.* at 1179, *citing Sierra Club*, 995 F.2d at 1484. This "'interest test' is not a clear-cut or bright-line rule. . . . Instead, [it] directs courts to make a practical, threshold inquiry." *City of Los Angeles*, 288 F.3d at 398 (citations, internal quotation marks omitted).

Additionally, regarding the third element, "[a] putative intervenor will generally

Page 5 - OPINION AND ORDER

demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Society,* 630 F.3d at 1180, *quoting California ex rel. Lockyer,* 450 F.3d 436, 441 (9th Cir. 2006). Courts applying this factor honor the Ninth Circuit's relatively permissive formulation of this element, holding that even a potential impairment of the putative intervenor's interests will suffice. *See, e.g., Wild Equity Inst. v. City & Cnty. of San Francisco,* No. C 11-00958 SI, 2011 WL 2532436, at *2 (N.D. Cal. June 24, 2011) ("Should plaintiffs prevail or come to an agreement with defendants regarding management operations of Sharp Park, [the putative intervenor's] ability to protect its interest in its members' use of the golf course may potentially be impaired or impeded.")

Finally, in evaluating the fourth element– whether existing parties adequately represent a prospective intervenor's interests– courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *City of Los Angeles,* 288 F.3d at 398 (citations omitted). "The burden of showing inadequacy of representation is minimal and is satisfied if the applicant shows that representation of its interests may be inadequate." *Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir. 2006) (internal quotation marks omitted), *quoting Sagebrush Rebellion,* 713 F.2d at 528. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003), *citing League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1305 (9th Cir. 1997). If the

Page 6 - OPINION AND ORDER

prospective intervenor's interest is identical to that of one of the existing parties, courts require a "compelling showing" to demonstrate inadequate representation. *Id.*

Here, plaintiffs admit that permittees should be allowed to intervene during the remedy stage of this litigation and participate in any settlement negotiations that occur throughout the litigation, but resist permittees' intervention as of right during the merits stage. I find, however, that the permittees satisfy all four requirements for intervention as of right during the litigation as a whole, each of which is discussed below.

### I. Timeliness

Plaintiffs do not challenge the timeliness of permittees' motion. Indeed, permittees filed their motion at an early stage of the proceedings, even before the administrative record was lodged with the court.

### II. "Significantly Protectable" Interest Relating to the Action

Permittees also establish both required aspects of a significantly protectable interest relating to the action: an interest protectable under some law; and a relationship between the legally protected interest and the claims at issue. First, permittees' interest in their grazing permits is protectable under "some law." *City of Los Angeles*, 288 F.3d at 398. Plaintiffs contend that Forest Service grazing permits are not legally protected because they are easily revocable and do not convey a cognizeable interest in Forest Service land. *Public Lands Council v. Babbitt*, 529 U.S. 728, 735 (2000) (grazing permits are leaseholds, under the discretion of the Department of Agriculture, which may modify, fail to renew, or cancel a permit at any time without compensation); 36 C.F.R. § 222.3(b) ("Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources.") Yet, the Ninth

Page 7 - OPINION AND ORDER

Circuit has made clear that "no specific legal or equitable interest need be established" to satisfy the "interest" test. *City of Los Angeles*, 288 F.3d at 398. Thus, neither the conditional nature of the grazing permits nor their status as leaseholds prevents the permittees from asserting a legally protectable interest in them.

Indeed, permittees' interests in their grazing permits are protected under a number of legal authorities. Forest Service regulations govern the issuance of grazing permits, the limited circumstances under which the Forest Service may cancel, modify, or suspend grazing permits and the requisite notice the Forest Service must give to the permittee prior to cancellation or modification, among other procedures. 36 C.F.R. §§ 222.1-222.4. The regulations also provide a right to appeal written decisions related to issuance, denial, or administration of grazing permits. 36 C.F.R. § 251.82(a). Moreover, since a grazing permit is a license, issuance of a grazing permit is an agency action that may be deemed final under the APA and subject to judicial review. *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 983, 984-85 (9th Cir. 2006). Finally, the Forest Service must comply with aspects of the APA requiring written notice and an opportunity to be heard before instituting agency proceedings to cancel a grazing permit. *Anchustegui v. Dep't of Agric.*, 257 F.3d 1124, 1128-1129 (9th Cir. 2001). Accordingly, I find that permittees' grazing permits are protected under "some law." *See Wilderness Society*, 630 F.3d at 1179.

Plaintiffs also rely on two decisions from this district to argue that permittees have only a "pure economic expectancy" in their grazing permits, not "significantly protectable" interests. *Or. Natural Desert Ass'n v. Shuford*, No. 06-cv-24-AA, 2006 WL 2601073, at *7 (D. Or. Sept. 8, 2006); *Ctr. for Tribal Water Advocacy v. Gutierrez*, No. 06-cv-708-SU, 2007 WL 527932, at *1

Page 8 - OPINION AND ORDER

(D. Or. Feb. 12, 2007). In *Shuford,* the Steens Mountain Landowner Group, a non-profit representing private landowners, sought to intervene in an action challenging the Bureau of Land Management's (BLM) adoption of a resource management plan for Steens Mountain under NEPA and other environmental statutes. *Id.* at *1. The landowner group asserted that its members had significantly protectable interests in the outcome of the litigation because their livestock grazing and commercial recreation businesses relied on permits allowing them to use publically held BLM land to access their private property. *Id.* at *6. There, the Court held that the Ninth Circuit's then-valid "federal defendant" rule categorically barred the landowner group's intervention of right in the merits stage. *Id.* at *7.

The Court went on to note that the landowner groups' "economic interests based on its members' businesses and an interest in access to private property" did not qualify as "significant protectable interests." *Shuford,* 2006 WL 2601073, at *7. Citing an unpublished Ninth Circuit case, the Court implied that the landowner's economic interests were nothing more than "pure economic expectancy." *Id., citing Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agric.,* 143 Fed. Appx. 751, 753 (9th Cir. 2005) (holding that a domestic rancher trade group's economic motives in preventing the Department of Agriculture from lifting a ban on beef imports from Canada did not qualify as legally protected interest). The Court also reasoned that the landowners' grazing permits were not a significant protectable interest because such permits are issued discretionarily and conveyed no right, title, interest, or estate in public lands. *Id.* Consequently, the court determined that the landowners' "economic interest in ensuring its members' commercial operations relying on federally-permitted use of the public lands remains unchanged" during the merits stage of the litigation. *Id.*

Page 9 - OPINION AND ORDER

*Gutierrez*, a case addressing similar facts, simply reiterated the court's conclusions in *Shuford*. There, grazing permit holders moved to intervene in an action challenging various livestock grazing authorizations under NEPA and other statutes. *Gutierrez*, 2007 WL 527932, at *1. In denying the motion to intervene, the court determined, without further analysis, that "permittees' economic interests do not qualify as 'significant protectable interests' based upon federally issued grazing permits for the same reasons as those in *Shuford*." *Id.* at *3.

The decisions in *Shuford* and *Gutierrez* do not dictate the outcome here. Both cases primarily resolved the motions to intervene as of right on the basis of the now-defunct "federal defendant" rule. Even the court's analysis in *Shuford* of the potential threat to the landowners' economic interests relied on the categorical distinction between the merits and remedial stages, which the Ninth Circuit now abandons. More importantly, though, both *Shuford* and *Gutierrez* overlook the regulations governing issuance, renewal, modification, and cancellation of grazing permits, as well as the case law concerning review of grazing permit decisions, when concluding that grazing permits do not constitute legally protectable interests. In sum, neither *Shuford* nor *Gutierrez* changes the fact that permittees claim interests, in the form of Forest Service grazing permits, that are protectable under Forest Service regulations, among other sources of law.

In addition to showing that their interests are protectable under "some law," permittees also satisfy the second aspect of this requirement by demonstrating a relationship between their legally protected interest and "the property or transaction which is the subject of the action." *Wilderness Society*, 630 F.3d at1177. The connection between the permittees' interest in their grazing permits and the claims in this case is unmistakably clear. The agency actions that plaintiffs challenge are precisely the renewals of permittees' grazing permits under a categorical

Page 10 - OPINION AND ORDER

exclusion from NEPA analysis. By seeking to have the court set aside those renewals, the plaintiffs attack the very "transactions" that extended permittees' legally protected right to graze livestock on Forest Service lands. Thus, permittees satisfy both qualifications to necessary to show that they have a "significantly protectable" interest relating to the subject of this suit.

## III.    Effect of Disposition on Protectable Interest

Permittees also make a sufficient showing that the disposition of this litigation may as practical matter impair or impede their ability to protect their grazing permits. *See Wilderness Society*, 630 F.3d at 1177. There is profound disagreement between the parties about the practice effect of a potential order by this court to set aside the challenged Forest Service decisions reauthorizing permittees' grazing permits under the categorical exclusion provided by the 2005 appropriations rider. Permittees contend that a decision to set aside the Forest Service decisions would both strip them of their current grazing permits pending the Forest Service's potential reissuance of a new permit and initiate a NEPA analysis that could result in presentation of alternatives to the existing permits, and thus, create the potential for the issuance of ultimately more restrictive permits. By contrast, plaintiffs insist that another appropriations bill passed by Congress provides that grazing permits issued under a categorical exclusion from NEPA compliance will be continued on their current terms until NEPA review indicates changes to the permit are necessary, at which time the permit would be modified, suspended, or cancelled accordingly. Department of Interior and Related Agencies Appropriations Act of 2004, §325, (Pub. L. 108-108).[3] Thus, plaintiffs argue that a favorable decision at the merits stage of this

---

[3] Plaintiffs first presented the legal authority supporting their argument in supplemental briefing following permittees' reply brief. Permittees object to that submission, since it was filed without leave of this court. Permittees also respond directly to plaintiffs' authority. They

Page 11 - OPINION AND ORDER

litigation would not immediately interrupt permittees' ability to graze their allotments, obviating their need to intervene until the remedy stage.

I need not conclusively resolve this issue now, since I have not yet decided to set aside any challenged Forest Service decision. Given the ongoing disagreement concerning the practical effect of a merits decision, I find that permittees demonstrate the *potential* for their grazing permits to be immediately affected by the disposition of this litigation.

Further, even if the plaintiffs are correct about the lack of short-term impact from a decision to set aside Forest Service decisions, permittees describe sufficient long-term impacts of such a disposition to justify their intervention as of right. That is, the potential impact of setting aside Forest Service decisions, initiating NEPA review, or even enjoining the Forest Service could certainly impair permittees' protectable interests in their grazing permits. Indeed, courts addressing intervention motions since *Wilderness Society* recognize that even long-term, consequential effects of an unfavorable disposition favor allowing intervention. *See Wild Equity Inst. v. City & Cnty. of San Francisco*, NO. C 11-00958 SI 2011 WL 2532436, at *2 (N.D. Cal. June 24, 2011) (in action alleging that operations of city golf course violated the Endangered Species Act and seeking an injunction to prevent draining of winter rainwater from the course, intervention by group promoting public golf courses was proper because groups' ability to protect its members' use of the course could be impaired if plaintiffs prevailed or negotiated an agreement with course management); *In Def. of Animals v. U.S. Dep't of the Interior*, NO.

---

contend that Pub. L. 108-108 by its terms only applies to grazing permits which expired or were transferred or waived between 2004 and 2008. Thus, Pub. L. 108-108 would arguably not apply to any permits which might expire in 2011 due to a disposition in this case setting aside Forest Service decisions reauthorizing those permits.

Page 12 - OPINION AND ORDER

2:10CV01852MCEDAD, 2011 WL 1085991, at *2 (E.D. Cal. Mar. 21, 2011) (granting motion to intervene by wild game hunting group in action challenging round-up of wild horses, since success in the suit might lead to return of excess horses to public lands, overpopulation of the area, degradation of the natural ecosystem, and ultimately, diminished hunting opportunities of animal species that compete with wild horses for food and water).

Finally, I disagree with plaintiffs that permittees can address any negative long-term effects of this action in the NEPA process that might follow a decision to set aside Forest Service reauthorizations. Although permittees can participate in the NEPA review through public comment, they may not have standing to challenge the Forest Service's subsequent actions under NEPA. *See Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005) (since NEPA protects the environment, not the economic interests of those adversely affected by agency decisions, a plaintiff asserting purely economic interests does not fall within NEPA's zone of interests and does not have standing to challenge an agency action under NEPA). Accordingly, irrespective of the immediate effect of setting aside the Forest Service decisions, an adverse decision may trigger events that would practically impair permittees' long-term interests in maintaining the current terms of their grazing permits.

## IV.   Interests Inadequately Represented by Current Parties

Last, permittees demonstrate that the Forest Service may not adequately represent their interests in this action. Most importantly, even though both permittees and the Forest Service wish the court to uphold the Forest Service's decisions, they have vastly different interests in the litigation and thus, their "ultimate objective" differs. *See W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, NO. 4:CV 10-229-BLW, 2011 WL 2690430, at *4 (D. Idaho July 9, 2011)

Page 13 - OPINION AND ORDER

(although potential intervenors shared the immediate objective of affirming the challenged administrative action with government defendants, they differed on the "ultimate objective"). Permittees are narrowly focused on retaining their grazing permits unchanged to ensure the continuation of their ranch businesses. By contrast, the Forest Service represents a wider variety of public interests, requiring it to strike a balance between economic activities such as grazing and environmental conservation. *See Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("The government must present the broad public interest," not just the economic concerns of a particular industry). Inadequate representation is most commonly found in cases like this where "the applicant asserts a personal interest that does not belong to the general public." *Id.*, *quoting* 3B Moore's Federal Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995); *see Arakaki v. Cayetano*, 324 F.3d 1078, 1087 (9th Cir. 2003) (noting that courts tend to permit intervention when "the intervenors' interests are narrower than that of the government and therefore may not be adequately represented.") Since permittees and the Forest Service do not share the same ultimate objective, I do not require permittees to make the "compelling showing" to rebut a presumption of adequacy of representation; instead only a minimal showing of the inadequacy of the Forest Service's representation of permittees' interests is required. *Prete*, 438 F.3d at 956.

Permittees accomplish this minimal showing by illustrating that undoubtedly the Forest Service will not make all of their arguments. *See City of Los Angeles*, 288 F.3d at 398. In fact, permittees have already advanced an argument that the Forest Service did not make. They filed a proposed motion to strike 42 paragraphs of general allegations from plaintiffs' complaint– many of which describe livestock grazing negatively– because they are impertinent and immaterial,

Page 14 - OPINION AND ORDER

prejudicial to permittees, and would require introduction of burdensome and unnecessary extra-record evidence. (#29.) Although the Forest Service entered general denials of those allegations, it did not move to strike them from the complaint. Plaintiffs attempt to characterize permittees' proposed motion to strike as representing only a minor difference in litigation strategy from the Forest Service's approach, which generally would not justify intervention. *See Arakaki*, 324 F.3d at 1086. I, however, view permittees' proposed motion as an example of a discrete "argument" favoring permittees that the Forest Service failed to make. Moreover, it is also an example of permittees' unambiguous and vigorous support of livestock grazing on national forest lands, which Forest Service may not embrace so uniformly.

Additionally, permittees enhance their showing of the inadequacy of the Forest Service's representation by raising one potentially "necessary element" that they would contribute to the proceeding that the Forest Service might neglect. *See City of Los Angeles*, 288 F.3d at 398. Permittees note that they provided letters, monitoring reports, photographs, and field observations to the Forest Service pertaining to the various allotments. Thus, permittees argue that they are in a unique position to review the voluminous administrative record to determine whether their submissions were actually included, and supplement the record if any submissions are found to be missing. This ability to ensure a complete administrative record concerning every allotment and grazing permit could certainly impact the result of the litigation, which will focus in part on the sufficiency of the Forest Service's monitoring data to justify employing the categorical exclusion.

In sum, permittees carry their burden to demonstrate their entitlement to intervene as of right under Fed. R. Civ. P. 24(a). Accordingly, I need not address the parties' arguments

Page 15 - OPINION AND ORDER

concerning permissive intervention under Fed. R. Civ. P. 24(b).

## CONCLUSION

For the reasons set forth above, permittees' motion to intervene (#8) is granted.

Dated this 8th day of August, 2011.

_____
Honorable Paul Papak
United States Magistrate Judge

Page 16 - OPINION AND ORDER